**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| U-SHIP MARITIME SERVICES, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION H-07-3229 |
| | § | |
| INTERNATIONAL FRONTIER FORWARDERS, INC., | § | |
| *Defendant.* | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is defendant International Frontier Forwarders, Inc.'s ("IFF") motion for summary judgment.  Dkt. 10.  Upon consideration of the parties' pleadings and arguments, the summary judgment record, and the applicable law, IFF's motion for summary judgment is DENIED.

### I. BACKGROUND

This case arises from a shipment of vehicles and machinery from Wilmington, Delaware to Boma, Congo.  Dkt. 15 at 2.  U-Ship Maritime Services, as owner of the M/V Glory, entered into a charter party agreement with IFF for the charter of the M/V Glory.  *Id.*  The cargo was not owned by the charterer, IFF, but by third party shippers, Matondo Filawo and No. 1 Contracting Corporation ("Third Party Cargo Owners").  *Id.*  Pursuant to the charter party, IFF had until June 12, 2006 to unload the cargo after arrival in Boma.  *Id.*  Because cargo remained on the M/V Glory on June 12, 2006, demurrage began to run.  *Id.* at 3.  Due to a strike at the port, the vessel was on half demurrage until June 20, 2006 when the strike ended.  *Id.*  At that time, the vessel then went on full demurrage until it was completely discharged on June 24, 2006.  *Id.*  Under the charter party, IFF was responsible for the freight costs and the demurrage incurred at the port of discharge.  *Id.*, Ex. A at 3.  U-Ship contends that pursuant to the charter party provisions, IFF owes $71,550 in demurrage

1

as well as an additional $8,410 in unpaid freight.  *Id.* at 2.  IFF now moves the court for summary judgment on U-Ship's claim for freight and demurrage.  Dkt. 10.

## II. STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Carrizales v. State Farm Lloyds*, 518 F.3d 343, 345 (5th Cir. 2008).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 411 (5th Cir. 2007).  "[A]nd a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986).  Only when the moving party has discharged this initial burden does the burden shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.  If the moving party fails to meet this burden, then it is not entitled to summary judgment and no defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden

of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also Celotex*, 477 U.S. at 323-25. To prevent summary judgment, "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348 (1986) (quoting FED. R. CIV. P. 56(e)).

When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Envtl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008). The court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence; disregard all evidence favorable to the moving party that the jury is not required to believe; and give credence to the evidence favoring the nonmoving party as well as to the evidence supporting the moving party that is uncontradicted and unimpeached. *Moore v. Willis Ind. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000). However, the nonmovant cannot avoid summary judgment simply by presenting "conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). By the same token, the moving party will not meet its burden of proof based on conclusory "bald assertions of ultimate facts." *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978); *see also Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1221 (5th Cir. 1985).

### III. ANALYSIS

The charter party at issue here contains a lien clause giving U-Ship a lien on the cargo for any

demurrage and freight expenses.  However, it also requires U-Ship to obtain payment of those expenses by exercising that lien on the cargo  prior to seeking recovery of the expenses from IFF. Dkt. 15 at 4.  U-Ship concedes that the lien clause is binding and that it failed to exercise the lien, yet still seeks to recover the freight and demurrage costs from IFF.  *Id.*  Because U-Ship failed to exercise the lien contained in the charter party as required, IFF now moves the court for summary judgment on U-Ship's claim for freight and demurrage.  Dkt. 10.

A lien clause gives the vessel owner a lien on the cargo for demurrage and freight expenses, and provides further that the charterer is responsible for those expenses, but only to the extent that the vessel owner is unable to obtain payment of demurrage and freight by exercising that lien.  *Orient Shipping Rotterdam B.V. v. Hugo Neu & Sons*, 918 F. Supp. 806, 812 (S.D.N.Y. 1996).  However, if the conditions at the port of discharge make it impractical for the vessel owner to assert the lien, the charterer is not relieved from liability for demurrage by the lien clause.  *Id.* (*citing The Sinoe*, (1972) 1 Lloyd's Rep. 201 (C.A.)).  U-Ship, the vessel owner, alleges that it was impractical for it to assert its lien on the cargo for two reasons.  First, U-Ship contends that if it had exercised its lien against the cargo, it would have had to retain the cargo onboard the vessel and thus miss its next scheduled employment.  Dkt. 15 at 5.  Second, U-Ship contends that it was legally impractical to exercise its lien on the cargo because the lien had not been perfected with respect to the Third Party Cargo Owners.  *Id.* at 5-6.  Because the court finds that a genuine issue of material fact remains concerning U-Ship's first contention, U-Ship's second argument need not be addressed.

U-Ship contends that due to security concerns at the Port of Boma, the only practical manner in which it could have exercised its lien on the cargo was to keep the cargo onboard, close the hatches, and prevent discharge of the cargo.  Dkt. 15 at 5.  However, retaining the cargo onboard

4

the vessel would have delayed the vessel's departure, resulting in cancellation of its next employment. Therefore, U-Ship argues that it was unable, as a practical matter, to exercise the lien. *Id.* IFF counters that, as a matter of law, U-Ship could have preserved its lien through a restricted delivery of the cargo. Dkt. 17 at 2–3. Greg Diaz, the President of IFF, stated in his declaration that U-Ship could have made "a restrictive delivery of the cargo under claim of lien in secure storage" and thus been able to reach its next employment. Dkt. 17, Ex. E at 2. But IFF does not contend in its reply that a restricted delivery was practical at the Port of Boma, where U-Ship contends that security concerns precluded *any* unloading of the cargo. Therefore, Mr. Diaz's declaration merely demonstrates that a genuine issue of material fact remains regarding the practicality of exercising the lien on the cargo via a restricted delivery at the Port of Boma. Accordingly, IFF's motion for summary judgment is DENIED.

## IV. CONCLUSION

Pending before the court is defendant IFF's motion for summary judgment. Dkt. 10. For the foregoing reasons, IFF's motion for summary judgment is DENIED.

It is so ORDERED.

Signed at Houston, Texas on March 23, 2009.

_____
Gray H. Miller
United States District Judge

TO ENSURE PROPER NOTICE, EACH PARTY RECEIVING THIS ORDER SHALL
FORWARD IT TO EVERY OTHER PARTY AND AFFECTED NONPARTY

5